[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR PRELIMINARY INJUNCTION
The plaintiff Grove Street Mutual Housing Limited Partnership (hereinafter, "Grove Street") has filed this action seeking to enjoin the Water Pollution Control Authority, Town of Windsor Locks, (hereinafter, "the WPCA") and the Town's Building Inspector, James Poumridge, from withholding a certificate of occupancy until a sewer connection fee has been paid.
The parties have filed a stipulation of facts in connection with this application which indicates, inter alia, that Grove Street intends to rehabilitate and convert a vacant former parochial school building at 55 Grove Street, Windsor Locks, Connecticut, to a twenty-one unit affordable mutual housing project. As noted, "[a]ll necessary zoning permits have been secured, building permits have been secured, construction has commenced, and the scheduled completion date is December 1, 1995." (Stipulation, ¶ 1). The stipulation also reveals that the WPCA has promulgated a schedule of charges for connection to the sewer system, the most recent on June 14, 1994. (Stipulation, ¶ 4). Moreover, after consideration at two of its meetings, the WPCA advised the plaintiff that it must pay a connection fee of $63,000 representing $3000 for each of the 21 units. (Stipulation, ¶ 7). Additionally, the plaintiff has been advised that a certificate of occupancy for the project will not be issued until the said $63,000 is paid. (Stipulation, ¶ 9; 10).
At the hearing before the court, Catherine McKinnon, the executive director for the project's sponsor, testified that the project's public and private financing does not include the additional $60,000 as only $3000 was included and set aside for a connection fee. She further testified that over 200 applicants have applied and that interviews were being conducted. The scheduled completion date, as noted in CT Page 12701 the stipulation, paragraph one, is December 1, 1995.
In determining whether to grant a temporary injunction, a trial court is required to balance the equities, which includes a determination of the likelihood that the plaintiff will ultimately prevail on the merits. Griffin Hospital v.Commission on Hospitals Health Care, 196 Conn. 451, 456-600
(1985). Additionally, "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Walton v. New Hartford,223 Conn. 155, 165 (1992).
The WPCA bases its decision that the connection fee must be paid on Section 4.2 of its sewer ordinances, which provides:
 Any person proposing a new discharge into the public sewer system or a substantial change in the volume or character of pollutants that are being discharged into the public sewer system shall notify the Superintendent. Notification for residential users shall be 15 days, commercial/industrial users 45 days prior to the proposed change or connection, in writing, by completing the proper connection application. (see 4.a)
Additionally, the WPCA promulgated certain sewer use charges on June 14, 1994. The relevant portion for this dispute states: "entrance Fee to the Town's collection system $3000.00". The WPCA maintains that this entry fee, or connection fee, applies on a per unit basis. The WPCA stresses (and as acknowledged in the stipulation, paragraph eight) that it has consistently followed a practice of charging a connection fee on a per unit basis. Moreover, as indicated in the stipulation, paragraph nine, the WPCA has demanded that the full fee must be paid "based on town policy by which required fees must be paid before an application is accepted." The parties have not included any written policy, regulation or ordinance, as part of the stipulation, which would reflect this "town policy."
The plaintiff, on the other hand, argues that it need not pay a per unit connection fee based on the plain language of the ordinance. Section 4.2 states in part: [a]ny person CT Page 12702 preparing a new discharge . . . or a substantial change in the volume or character of pollutants that are being discharged into the public sewer system. . . ." (emphasis supplied). In paragraph five of the stipulation, the WPCA acknowledges that the discharge is not new:" [t]he building is, and for several decades has been, connected to the sewerage system." Additionally, Catherine McKinnon, also testified that the building is now connected to the system, that it is the same connection used by the former school and that it is not proposing any other connection.
The WPCA further acknowledges in paragraph six of the stipulation that:
 6. The volume of pollutants that will be discharged into the sewerage system following rehabilitation by Plaintiff Grove Street Mutual Housing is no greater than that discharged on an average daily basis when the Building was used as a parochial school or will the character of the pollutants be materially different from that of past discharges.
While the WPCA certainly has the authority to charge a reasonable connection fee, its fee must be based on a properly promulgated regulation or ordinance. General Statutes § 7-255. In the present case, as conceded by the WPCA in its Memorandum in Opposition to the Preliminary Injunction, p. 2, the sewer use charge ordinance is silent on the topic of multi unit connection fees.
Regulations governing land use "must be reasonably precise as the subject matter requires and as reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations." Helbigv. Zoning Commission, 185 Conn. 294, 307-08 (1981). A reasonably adequate and sufficient guide would certainly state the requirements for per unit connections. It cannot be left to a case by case, commission by commission, basis. "To hold otherwise, to permit an administrative agency to develop an ad hoc plan as a yardstick against which to measure any given proposal, is to substitute whimsy for sound judgment." Monroev. Middlebury Conservation Commission, 187 Conn. 476, 484
(1982). Furthermore, as noted by the court therein: CT Page 12703
 Although due process is not intended to hold administrative agencies under a short leash, it is designed to restrain them from roaming at will over the adjudicative landscape. To avoid such constitutional problems, statutes sometimes specifically preclude an administrative agency from exercising its statutory powers until it adopts appropriate regulations to govern its doings.
This court is aware, as indicated in paragraph eight of the stipulation, that the WPCA has followed a practice of charging a connection fee based on the number of units. Nevertheless, this practice is not a substitute for a properly promulgated regulation. General Statutes § 7-255.
Inasmuch as the stipulation indicates that the connection is neither new nor constitutes a substantial change in the volume or character of pollutants and further, inasmuch as the sewer charge ordinance is silent on the issue of a per unit charge, this court finds both that the equities favor the plaintiff and that it (and those qualified to live there) will be irreparably harmed. Accordingly, the request for preliminary injunctive relief is granted.